**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

FREDERICK O. JONES, JR.,
*obo Frederick O. Jones, deceased,*
and FREDERICK O. JONES, *deceased,*

       *Plaintiffs,*

*v.*

COMMISSIONER OF SOCIAL SECURITY,

       *Defendant.*

_____/

CASE NO. 16-11206

DISTRICT JUDGE ROBERT H. CLELAND
MAGISTRATE JUDGE PATRICIA T. MORRIS

<u>**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS
MOTIONS FOR SUMMARY JUDGMENT (Docs. 12, 16)**</u>

## I.   <u>RECOMMENDATION</u>

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Claimant is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Doc. 12) be **DENIED**, that the Commissioner's Motion for Summary Judgment (Doc. 16) be **GRANTED**, and that this case be **AFFIRMED**.

## II.   <u>REPORT</u>

### A.   **Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for a period of disability, Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401 *et seq*, and , Supplemental Security Income ("SSI") under Title XVI, 42 U.S.C. § 1381 *et seq*. (Doc. 2; Tr. 1-4). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 16).

Claimant filed applications for DIB and SSI in April 2009; his claims were denied in October 2009. (Tr. 60-61, 134-43). Claimant sought review of that decision by an administrative law judge ("ALJ"), which took place in November 2010 before ALJ Jerome Blum. (Tr. 30-55). The ALJ found Claimant not disabled in a December 2010 decision. (Tr. 17-24). Claimant again filed for DIB and SSI in May 2011, and those claims was again denied. (Tr. 524). In an October 2011 decision the Appeals Council declined to review the ALJ's December 2010 decision. (Tr. 1-3). On December 2, 2011, Claimant filed a civil action appealing the ALJ's December 2010 decision. (Tr. 524).

In May 2012 Claimant challenged the denial of his May 2011 applications before ALJ David Mason, Jr. (Tr. 524). ALJ Mason granted a closed period of benefits from December 4, 2010, through December 31, 2011. (*Id*.). Claimant died on August 13, 2013. (Tr. 688). Claimant's son, Plaintiff, was substituted as the party at interest on July 18, 2013. (Tr. 648).

In July 2013 the Appeals Council vacated its earlier order affirming ALJ Blum's December 2010 decision, and remanded for further consideration of Claimant's alcohol abuse and certain opinion evidence. (Tr. 645-46).

2

On December 10, 2014, Plaintiff, Claimant's sister, and Claimant's mother attended a hearing before ALJ Joy Turner. (Tr. 549-90). In March 2015 ALJ Turner found that, but for his alcoholism, Claimant would not have been disabled between March 22, 2006 and December 3, 2010, nor between May 12, 2012 and his death, thus he was not disabled under the Act. (Tr. 524-41). The appeals council then denied Plaintiff's request for review of ALJ Turner's decision (Tr. 507-09). On April 4, 2016, Plaintiff filed the instant civil action. (Doc. 1).

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions

3

of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'"

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

4

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

#### i.    ALJ Bloom's 2010 Decision

Following the five-step sequential analysis, ALJ Bloom found Claimant not disabled under the Act. (Tr. 24). The ALJ found at Step One that Claimant had not engaged in substantial gainful activity following the alleged onset date, March 22, 2006. (Tr. 19). At Step Two, the ALJ concluded that Claimant had the following severe impairments:

5

"alcohol abuse, hypertension, low back pain, and adjustment disorder with mixed emotional features." (Tr. 19-21). At Step Three, the ALJ found that Claimant's combination of impairments did not meet or equal one of the listed impairments. (*Id*.). The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform work at the light level of exertion, with an additional limitation to unskilled tasks. (Tr. 21-23). At Step Four, the ALJ found that Claimant could not perform any past relevant work. (Tr. 23). At Step Five, the ALJ concluded that Claimant retained the ability to perform work which exists in significant numbers in the national economy. (Tr. 23-24).

### ii.    ALJ Turner's 2015 Decision

Following the five-step sequential analysis, ALJ Turner found Claimant not disabled under the Act. (Tr. 541). The ALJ found at Step One that Claimant had not engaged in substantial gainful activity following the alleged onset date, March 22, 2006. (Tr. 528). At Step Two, the ALJ concluded that Claimant had the following severe impairments between March 22, 2006, and December 3, 2010: "history of low back injury, obesity, affective disorder, alcohol addiction, and alcohol-induced liver disease." (*Id*.). At Step Three, the ALJ found that Claimant's combination of impairments did not meet or equal one of the listed impairments prior to his closed period of disability. (Tr. 528-30). The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform work at the light level of exertion, but with the ability to "occasionally climb ramps, stairs, ladders, ropes, and scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; would need to avoid hazardous machinery and heights; would be limited to simple, routine

6

tasks; would not have the persistence, pace, or concentration perform simple, routine tasks on an 8-hour day, 5-day a week, 40-hour workweek or equivalent basis; and would have been off task 20% of the time due to impairments and absent 3 or more days a month due to impairments." (Tr. 530-33). This rendered him unable to perform any past relevant work (Tr. 533), and unable to perform work available in significant numbers in the national economy (Tr. 534). However, the ALJ found that Claimant would not have been disabled but for his abuse of alcohol. (Tr. 535-36). But for his alcohol abuse, Claimant would have been able to perform light work, except he could "occasionally climb ramps, stairs, ladders, ropes, and scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; would need to avoid hazardous machinery and heights; and would be limited to simple, routine tasks." (Tr. 536). This level of functionality would have permitted him to perform jobs available in substantial numbers in the national economy. (Tr. 539). The ALJ also found that Claimant did not develop new impairments after his closed period of disability, and thus continued to be disabled pursuant to the prior ALJ's decision until the date of his death, August 13, 2013. (Tr. 540).

### E.   Administrative Record

#### 1.   Medical Evidence

The Court has thoroughly reviewed Claimant's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 2.    Application Reports and Administrative Hearing

### a.    Claimant's Function Report

Claimant completed a function report on an unknown date, and which appears to be missing its first page. (Tr. 191-92). The report is written in the third person, and appears to have been completed on Claimant's behalf. (Tr. 191). Claimant asserted that he had no problems with personal care, but experienced difficulty bending. (*Id*.). He did not regularly prepare meals; he vacuumed but performed no other chores. (Tr. 192).

### b.    Claimant's Testimony at the 2010 Administrative Hearing

At the November 2, 2010, hearing before the ALJ, Claimant testified that he did not cook as the result of having no inclination or skill in the kitchen, and not because of disability. (Tr. 594-95). He did not wash his own laundry, and received assistance from his siblings in performing chores. (Tr. 595-96). His average day consisted of watching television for three or four hours daily, listening to music, and completing crossword puzzles. (Tr. 597). He napped for one hour daily to reduce the impact of headaches and pain. (*Id*.). He became "moody" due to being out of work. (Tr. 598). He reported drinking one pint of alcohol daily in the past, but at the time of the hearing drank only "[a] few beers" on Sunday. (*Id*.). He attended church four times weekly. (Tr. 599). Claimant  was not under treatment for psychological issues, but regularly spoke with his pastor for religious and life guidance. (*Id*.). Claimant complained that his legs became swollen three or four days per week, and that he elevated his lower extremities at waist level for one hour daily to ease this symptom. (Tr. 600). He also suffered back pain "often" as the result of

8

sitting for long periods. (Tr. 602). Claimant further complained of shoulder pain which prevented him from playing sports. (*Id*.). He experienced migraines daily for "[a] few hours." (Tr. 603). His headaches resulted in emotional instability and made him quick to anger. (Tr. 604). Claimant asserted that he experienced memory loss and negatively impacted his relationship with others. (Tr. 605). Claimant stated that he could sit or stand for roughly thirty minutes. (Tr. 605-06). He sometimes fell. (Tr. 606). Claimant could lift only "a fork and spoon" because of "sharp pains." (*Id*.). He could walk only half of a block due to breathing issues and obesity. (Tr. 607). His sleep was interrupted by pain, and he slept only four hours nightly. (Tr. 608).

### c.    Plaintiff's Testimony at the 2014 Administrative Hearing

Plaintiff, Claimant's sister, and his mother, appeared at a December 10, 2014, hearing following Claimant's death. (Tr. 551). Plaintiff asserted that Claimant suffered from swollen legs and yellowed eyes. (Tr. 556). Plaintiff asserted that Claimant did not elevate his legs, but "[m]ostly walked," which provided some pain relief. (Tr. 556-57). Plaintiff confirmed that Claimant napped for several hours during the day due to poor sleep during the night. (Tr. 558). Plaintiff asserted that Claimant regularly argued with his housemates, which was out of character. (Tr. 559). Claimant self-isolated for portions of the day, and roughly half of his days were "bad days." (Tr. 561).

Plaintiff reported that Claimant drank occasionally between 2005 and 2007, but admitted that he spent a relatively small portion of his day around his father due to school and work obligations. (Tr. 563).

The ALJ clarified that she was interested in testimony regarding Claimant's condition prior to 2011, because Claimant's work in the post-2011 period precluded administration of benefits between late-2011 and his death. (Tr. 566). Plaintiff's counsel did not object to limiting testimony to the time prior to his closed period of benefits, *i.e.* 2005 through 2010. (*Id.*).

Claimant's sister reported that Claimant regularly dwelled on past events. (Tr. 567-68). Claimant had difficulty focusing during conversations. (*Id.*). She reported that Claimant was generally "under the influence," but that when he was not drinking he was "calm, lovable, not confrontational." (Tr. 569). Claimant complained of pain regularly, and walked with a slight limp. (Tr. 569-70).

Claimant's mother testified that Claimant was angry and depressed even while sober because of his poor financial situation. (Tr. 574). She described Claimant as being "all over the place," but the meaning of this statement was less than clear. (Tr. 575). Claimant limped due to pain, but did not use a cane. (Tr. 576). Claimant napped as a means of mitigating pain. (Tr. 577). He elevated his leg to alleviate leg pain. (*Id.*). Claimant sometimes experienced depression. (Tr. 579). Claimant propped his legs up regularly, and was required to stand "all the time" in his job as a security guard. (Tr. 580-81).

### d.      The VE's Testimony at the 2014 Administrative Hearing

The ALJ then called upon the services of a VE to determine Claimant's ability to perform work. (Tr. 53). The ALJ asked several questions regarding Claimant's past work, but these questions are not relevant as the ALJ found that Claimant was unable to perform

10

any past work, and thus based her unfavorable decision on Claimant's ability to complete other work available in the national economy.

The ALJ first asked the VE to assume a hypothetical individual with Claimant's age, education, and work experience, and who could perform light work, but with a limitation to "occasionally climb[ing] ramps and stairs, ladders, ropes, and scaffolds; he could occasionally balance, stoop, kneel, crouch, and crawl; he would need to avoid hazardous machinery and heights; and would be limited to simple, routine tasks." (Tr. 584). The VE found that such a worker could perform work available in the national economy, including the positions of assembler (200,000 jobs nationally), inspector (110,000 jobs), and hand packager (300,000 nationally). (Tr. 585).

The ALJ then posed a second hypothetical, wherein the worker would be limited as in the first hypothetical, but would also require a sit/stand option. (Tr. 585). The VE found that such a worker could perform work as an assembler (70,000 jobs), inspector (35,000 jobs), or hand packager (90,000 jobs).

In a third hypothetical, the ALJ added that the worker would be off task twenty percent of the workday due to concentration deficits. (Tr. 586). The VE found that such a worker could perform those jobs identified in the prior hypothetical. (*Id*.). The VE found that such a worker could not perform jobs available in substantial numbers in the national economy. (Tr. 586).

Following questioning by Claimant's attorney, the VE confirmed that a worker who must elevate their legs at waist height "even for a short amount of time" would be unemployable. (Tr. 586-87).

### F. Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2. Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *2. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* at 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). *See also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-3p, 2006 WL 2329939, at *2.

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). *See also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2). *See also Caldwell v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec. of Health & Human Servs*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273, 1995 WL 138930, at *1 (6th Cir. 1995) (unpublished table decision).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Caldwell v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

14

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quotation omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)   [D]aily activities;
(ii)  The location, duration, frequency, and intensity of . . . pain;
(iii) Precipitating and aggravating factors;
(iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

15

> (v)   Treatment, other than medication, . . . received for relief of . . . pain;
> (vi)  Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *See also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.   Analysis

Plaintiff argues that the ALJ erred by: i) failing to comply with the Appeals Council's remand order; ii) failing to obtain an updated medical opinion to determine when Claimant became disabled; iii) incorrectly finding that Claimant would not have been disabled but for his use of alcohol. (Doc. 12 at 9-14). I address these arguments in turn.

16

### 1.   The Appeal Council's Order is Non-Reviewable

Plaintiff first argues that the ALJ failed to comply with the directions of the Appeals Council's July 16, 2013, order. (Doc. 12 at 9-11). The Appeal Council's order "vacate[d] the final decision of the Commissioner of Social Security" and remanded the case to the ALJ. (Tr. 645). In particular, the Appeals Council noted that the ALJ's decision improperly considered Claimant's alcohol addiction, because he was found to not be disabled regardless of his addiction. (*Id.*). Further, the Appeals Council noted that the decision did "not address the opinion and reports contained in Exhibits 14F, 15F, 16F, 20F, 22F, and 24F." (*Id.*). The order of remand directed the ALJ to "[g]ive further consideration to the claimant's maximal residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations . . . . In doing so, evaluate the opinion evidence in the record . . . and explain the weight given to such opinion evidence." (Tr. 646). The ALJ was also instructed to "[c]onduct the further proceedings required to determine whether drug addiction and alcoholism are contributing factors material to the finding of disability." (*Id.*). The order "neither affirm[ed] nor reopen[ed] the subsequent allowance, and the favorable decision will remain final unless the [ALJ] reopens the decision pursuant to the reopening regulations." (*Id.*).

Plaintiff complains that the ALJ failed to "consider anew the entire period at issue," and that the ALJ was obligated to "make a decision covering the entire period of May 22, 2006 through the [Claimant's] death on August 13, 2012. However, the ALJ neglected to

make a decision for the period of December 4, 2010 through December 31, 2011, covering the closed period issued by the May 20, 2012 decision . . . and the period of January 1, 2012 through the date of the May 20, 2012 decision." (Doc. 12 at 10). Plaintiff further complains that the ALJ "failed to articulate how the prior decision relates to the Plaintiff's recent death. Therefore, the ALJ failed to follow the Appeal [sic] Council's remand order and this matter should be remanded for a determination as to the entire period of March 22, 2006, through the date of the Judge's decision pursuant to 20 C.F.R. §404.977." (*Id.* at 10-11).

As the Commissioner aptly notes, even if the ALJ failed to follow the Appeals Council's instructions, such a deficiency is unreviewable by this Court. Federal courts are constrained by 42 U.S.C. § 405(g) to review of only "final decision[s] of the Commissioner." The Appeals Council's 2013 order in this case represented an intermediate step in the administrative process, after which the ALJ issued her 2015 decision, and which was made final by the Appeals Council's 2016 decision. (Tr. 507-09). The Court is thus not empowered to decide whether the ALJ failed to comply with the Appeals Council's 2013 order. Plaintiff's argument regarding the Appeals Council order merits no further discussion. *See Betson v. Comm'r of Soc. Sec.*, No. 08-14943-BC, 2010 WL 1064434, at *4 (E.D. Mich. Mar. 22, 2010) (refusing to further consider an argument that the ALJ did not comply with the Appeals Council's order because "this Court only reviews the final decision of the Commissioner, and not intermediate administrative processes"); *Sharay v. Comm'r of Soc. Sec.*, No. 15-12531, 2016 WL 8114220, at *16 (E.D. Mich. Aug. 28, 2016)

18

("The undersigned agrees with the overwhelming majority of courts in this circuit, as well as all of the courts in this district which have specifically discussed this issue, and concludes that federal courts lack jurisdiction to consider whether an ALJ has complied with an Appeals Council instruction on remand. Accordingly, plaintiff's motion should be denied as to this issue."), report and recommendation adopted sub nom. *Sharay v. Colvin*, No. 15-12531, 2016 WL 5539791 (E.D. Mich. Sept. 30, 2016).

### 2.    The ALJ Was Not Obliged to Acquire Another Medical Expert's Testimony

Plaintiff next argues that the ALJ failed to "follow SSA policy that requires [an] updated medical expert opinion when the information is received that could affect the expert's previous findings." (Doc. 12 at 11). Plaintiff notes that the ALJ's 2015 decision includes findings of "low back injury, obesity, affective disorder, alcohol addiction, and alcohol-induced liver disease" (Tr. 528), that these ailments were not discussed by the consultative examiners, and that the ALJ was thereby required to call upon a medical examiner to evaluate this new evidence. (Doc. 12 at 11-12). Plaintiff cites SSR 96-6p, which provides that "[a]n updated medical expert opinion must be obtained by the administrative law judge or the Appeals Council before a decision of disability based on medical equivalence can be made." Plaintiff complains that Claimant's alleged onset date was "not addressed at all" in the 2010 ALJ's decision, and that "it is imperative that the relationship between the true onset of Plaintiff's disability and the closed-period determination onset be addressed." (*Id*. at 12).

There are several problems with Plaintiff's argument. First, SSR 96-6p was rescinded and replaced by SSR 17-2p on March 27, 2014, and thus did not apply to the ALJ's 2015 decision in this case. Second, it is unclear why Plaintiff references the issue of medical equivalence, and she does not argue that Claimant was disabled because he met or equaled a listed impairment. Third, SSR 96-6p did not require ALJs to acquire an updated medical opinion whenever new medical evidence was submitted, but rather provides that "[w]hen additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p. Fourth, the Commissioner points out that no new medical evidence has been submitted to the record since ALJ Blum rendered his 2010 decision, thus it would be wholly unnecessary to call upon the services of a medical examiner. (Doc. 16 at 15-16). No error can be found here.

### 3. The ALJ Reasonably Concluded that Claimant's Alcoholism Was a Contributing Factor Material to his Disability

Finally, Plaintiff argues that the ALJ erred by concluding that Claimant's alcoholism was a contributing factor material to his otherwise favorable disability determination. (Doc. 12 at 13-14).

The regulations provide the proper procedure to determine if substance use is material to the determination of disability. *See* 20 C.F.R. §§ 404.1535, 416.935. First, the ALJ must determine whether claimants suffer from a disability from symptoms that include

substance abuse. In making this determination, the ALJ considers the effects of substance abuse disorders considering "strictly symptoms, not causes." *Brueggemann v. Barnhart,* 348 F.3d 689, 694 (8th Cir. 2003). Next, the ALJ must determine whether the substance use is a contributing factor material to the determination of disability, *i.e.* whether the "limitations would remain when the effects of the substance use disorders are absent." *Id.*; 20 C.F.R. §§ 404.1535, 416.935. Plaintiff bears the burden of demonstrating that the substance abuse is not a contributing factor material to his disability. *See Cage v. Comm'r of Soc. Sec.,* 692 F.3d 118, 122–25 (2nd Cir. 2012); *see also Zarlenga v. Barnhart,* 96 Fed. Appx. 987, 989–90 (6th Cir. 2004).

Plaintiff complains that the ALJ "did not go over, with particularity, how [Claimant's] alcoholism and his hypothetical sobriety would affect his skills, activities of daily living and residual functional capacity." (Doc. 12 at 13-14). Plaintiff's generalized complaint is not reflective of the ALJ's decision. The ALJ explicitly discussed Claimant's condition as it existed with and without his alcohol addiction, and concluded that he would have been capable of performing work available in substantial numbers in the national economy but for his substance abuse. (Tr. 535-36). She noted that during periods of sobriety Claimant was able to go to "the barbershop, r[ide] in a car, spen[d] time with others, sometimes attend[] church, . . . pay bills, count change, and handle a savings account." (Tr. 535). She therefore concluded that, but for his alcohol abuse, Claimant would have been only mildly limited in social functioning; moderately limited in terms of concentration, persistence, and pace; and would have experienced no episodes of

21

decompensation. (Tr. 535-36). Plaintiff does not challenge the ALJ's interpretation of this evidence, and indeed does not engage with the ALJ's decision at all. Plaintiff bears the burden of demonstrating that Claimant's substance abuse was not a contributing factor material to his disability, *see Zarlenga*, 96 Fed. Appx. 989–90, and she has not even attempted to meet this burden. While the ability to ride in a car is perhaps not significantly probative of the Claimant's ability to focus or interact with others, Plaintiff has failed to discuss, much less dispute, these findings. Plaintiff has not identified any remandable error.

### H.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 12) be **DENIED**, the Commissioner's Motion (Doc. 16) be **GRANTED**, and that this case be **AFFIRMED**.

## III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the

objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Claimant v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 21, 2017                      S/ PATRICIA T. MORRIS
                                          Patricia T. Morris
                                          United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: April 21, 2017                      By s/Kristen Castaneda
                                          Case Manager